1

**BRODSKY & SMITH**
Evan J. Smith, Esquire (SBN 242352)

2

esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)

3

rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900

4

Beverly Hills, CA 90212
Phone: (877) 534-2590

5

Facsimile: (310) 247-0160

6

*Attorneys for Plaintiff*

7

UNITED STATES DISTRICT COURT

8

NORTHERN DISTRICT OF CALIFORNIA

9

10

JUSTIN SMALL,

Case No.:

11

Plaintiff,

**Complaint For:**

12

vs.

(1)  Violation of § 14 (a) of the Securities
Exchange Act of 1934

13

VOLTA INC., ELI AHETO, VINCE
CUBBAGE, MARTIN LAUBER,

(2)  Violation of § 20(a) of the Securities
Exchange Act of 1934

14

KATHERINE J. SAVITT, BONITA C.
STEWART, and JOHN TOUGH,

15

Defendants.

**JURY TRIAL DEMANDED**

16

17

Plaintiff, Justin Small ("Plaintiff"), by and through his attorneys, alleges upon information

18

and belief, except for those allegations that pertain to him, which are alleged upon personal

19

knowledge, as follows:

20

**SUMMARY OF THE ACTION**

21

1.     Plaintiff brings this stockholder action against Volta Inc. ("Volta" or the

22

"Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,",

23

collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of

24

the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts

25

to sell the Company to affiliates of Shell plc ("Ultimate Parent") through its subsidiary Shell USA

26

Inc. ("Parent") and merger vehicle SEV Subsidiary, Inc. ("Merger Sub") (collectively with

27

Ultimate Parent, and Parent, "Shell") as a result of an unfair process, and to enjoin an upcoming

28

stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.       The terms of the Proposed Transaction were memorialized in a January 18, 2023, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Shell will acquire all of the remaining outstanding shares of Volta's common stock at a price of $0.86 per share in cash. As a result, Volta will become an indirect wholly-owned subsidiary of Shell.

3.       Thereafter, on February 8, 2023, Volta filed a Preliminary Proxy Statement on Form PREM14A attaching the proxy statement (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4.       The Proposed Transaction is unfair for a number of reasons.  Significantly the Preliminary Proxy Statement makes no mention on whether a committee of disinterested board members was created to run the sales process.

5.       Additionally, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6.       In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement in an effort to Plaintiff, to vote in favor of the Proposed Transaction.  The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Volta, provided by Volta management to the Board

and the Board's financial advisors, Raymond James & Associates, Inc. ("Raymond James"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Raymond James and provided to the Company and the Board.

7.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

8.     Plaintiff is a citizen of Massachusetts and, at all times relevant hereto, has been a Volta stockholder at all relevant times.

9.     Defendant operates a network of smart media-enabled charging stations for electric vehicles in the United States. Volta is incorporated under the laws of the State of Delaware and has its principal place of business at 155 De Haro Street, San Francisco, CA 94103.  Shares of Volta common stock are traded on the New York Stock Exchange ("NYSE") under the symbol "VLTA".

10.     Defendant Eli Aheto ("Aheto") has been a Director of the Company at all relevant times.

11.     Defendant Vince Cubbage ("Cubbage") has been a Director of the Company at all relevant times.  In addition, Cubbage serve as the Interim Chief Executive Officer ("CEO") of the Company.

12.     Defendant Martin Lauber ("Lauber") has been a Director of the Company at all relevant times.

13.     Defendant Katherine J. Savitt ("Savitt") has been a Director of the Company at all relevant times.  In addition, Savitt serves as the Chairperson of the Company Board of Directors.

14.     Defendant Bonita C. Stewart ("Stewart") has been a Director of the Company at all relevant times.

15.     Defendant John J. Tough ("Tough") has been a Director of the Company at all relevant times.

16.     Defendants identified in ¶¶ 10 - 15 are collectively referred to as the "Individual

Defendants."

17.    Non-Party Ultimate Parent is operates as an energy and petrochemical company Europe, Asia, Oceania, Africa, the United States, and Rest of the Americas.

18.    Non-Party Parent is a subsidiary of Ultimate Parent.

19.    Non-Party Merger Sub is a subsidiary of Ultimate Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

20.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21.    Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

22.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Volta maintains its principal offices in this district, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## SUBSTANTIVE ALLEGATIONS

### Company Background

23.    Volta operates a network of smart media-enabled charging stations for electric vehicles in the United States.  As of December 31, 2021, it had installed 2,264 chargers across 23 territories and states.  Volta was founded in 2010 and is headquartered in San Francisco, California.

24.    The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction,

indicated sustained and solid financial performance.  For example, in a November 14, 2022 press release announcing its 2022 Q3 financial results, the Company highlighted such milestones as total third quarter revenue increasing 69% year-over-year to $14.4 million.

25.     Speaking on these positive results, Interim CEO Defendant Cubbage, commented on the Company's positive financial results as follows, "Volta's business continues to grow, demonstrating the power and value of our business model and media network."

26.     These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by Volta.  Clearly, based upon these positive financial results and outlook, the Company is likely to have tremendous future success.

27.     Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused Volta to enter into the Proposed Transaction without providing requisite information to Volta stockholders such as Plaintiff.

***The Flawed Sales Process***

28.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

29.     First and foremost the Preliminary Proxy Statement fails to disclose whether a committee of disinterested and independent directors was created to run the sales process, and if so what the specific membership and powers of that committee were.  Conversely, if no such committee was created, the Preliminary Proxy Statement fails to provide adequate reasoning for that decision.

30.     Additionally, the Preliminary Proxy Statement fails to properly explain why the engagement of multiple financial advisors was necessary.  Notably, the Preliminary Proxy Statement indicates that in addition to engaging Raymond James, the Company also engaged Barclays Capital Inc. ("Barclays"), Goldman Sachs & Co. LLC ("Goldman Sachs"), and Cantor Fitzgerald & Co. ("Cantor Fitzgerald") to provide financial advisory services during the sales

process.  Despite these engagements, it appears that neither Barclays nor Goldman Sachs provided a fairness opinion to the Company Board.

31.     Relatedly, the Preliminary Proxy Statement fails to provide the amount the Company has paid or currently owes Barclays, Goldman Sachs, or Cantor Fitzgerald.

32.     Additionally, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Shell, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

33.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

34.     On January 18, 2023, Volta issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **New York, NY (January 18, 2023) --** Volta Inc. (NYSE: VLTA) today announced the execution of a definitive merger agreement under which Shell USA Inc., a subsidiary of Shell plc (NYSE: SHEL), will acquire Volta in an all-cash transaction valued at approximately $169 million. The transaction brings Volta's powerful dual charging and media network to Shell's established brand and seeks to unlock robust, long-term growth opportunities in electric vehicle ("EV") charging.
>
> Under the terms of the merger agreement, Shell USA Inc. will acquire all outstanding shares of Class A common stock of Volta at $0.86 per share in cash upon completion of the merger, which represents an approximate 18 percent premium to the closing price of Volta stock on January 17, 2023, the last full trading day prior to the announcement of the transaction.
>
> Vince Cubbage, Interim Chief Executive Officer, said, "The shift to e-mobility is unstoppable, and Shell recognizes Volta's industry-leading dual charging and media model delivers a public charging offering that is affordable, reliable, and accessible. While the EV infrastructure market opportunity is potentially enormous, Volta's ability to capture it independently, in challenging market conditions and with ongoing capital constraints, was limited. This transaction creates value for our

shareholders and provides our exceptional employees and other stakeholders a clear path forward."

Cubbage continued, "Both Volta and Shell have a demonstrated ability to meet the changing needs of customers, and this acquisition will bring that experience together to provide the options that are needed as more drivers choose electric."

This acquisition builds on the momentum in electric mobility by combining one of the leading EV charging and media companies in the U.S. with one of the world's largest energy suppliers. The transaction provides the opportunity to unlock Volta's significant signed pipeline of charging stalls in construction or evaluation and capture the seismic EV charging market opportunity. Following the completion of the transaction, there will be no immediate change in driver experience, Volta Media™ Network capabilities available to advertisers, or services provided to commercial properties and retail locations.

As part of the agreement, an affiliate of Shell will provide subordinated secured term loans to Volta to bridge Volta through the closing of the transaction.

Approvals

Volta's Board of Directors, having determined that the transaction is in the best interests of the company's stockholders, has unanimously approved the transaction and recommends that Volta's stockholders approve the transaction and adopt the merger agreement at the special meeting of stockholders to be called in connection with the transaction.

The transaction is expected to close in the first half of 2023. The closing of the merger is subject to the approval of Volta's stockholders, the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and other applicable regulatory approvals, and other customary closing conditions. Upon closing of the transaction, Volta's Class A common stock will no longer be listed on any public market.

Advisors

Goldman Sachs & Co. LLC and Barclays Capital Inc. are serving as advisors to Volta, and Shearman & Sterling LLP is serving as Volta's legal advisor. Raymond James & Associates, Inc. provided a fairness opinion to Volta's Board of Directors. UBS Securities LLC is serving as a financial advisor to Shell, and Norton Rose Fulbright US LLP is serving as Shell's legal advisor.

***Potential Conflicts of Interest***

35.     The breakdown of the benefits of the deal indicate that Volta insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as

Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Volta.

36.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  Notably, while the Preliminary Proxy Statement provides the following it fails to provide an accounting of the cash considerations payable upon the consummation of the Proposed Transaction.

| | Shares Beneficially Owned[1] | |
| --- | --- | --- |
| | Number | Percentage[2] |
| **Directors and Named Executive Officers** | | |
| Vincent T. Cubbage[3] | 1,691,935 | * |
| Eli Aheto[4] | 261,598 | * |
| Martin Lauber[5] | 460,097 | * |
| Katherine J. Savitt[6] | 402,362 | * |
| Bonita C. Stewart[7] | 215,538 | * |
| John J. Tough[8] | 12,821,249 | 7.3% |
| Francois Chadwick[9] | 202,253 | * |
| Brandt Hastings[10] | 207,660 | * |
| Andrew B. Lipsher[11] | 2,401,924 | 1.4% |
| Scott Mercer[12] | 7,963,913 | 4.6% |
| Christopher Wendel[13] | 8,150,487 | 4.8% |
| | | |
| All directors and executive officers as a group (13 persons)[14] | 34,779,016 | 19.9% |
| | | |
| 5% Stockholders | | |
| Entities Affiliated with Energize Ventures[15] | 12,821,249 | 7.3% |
| TortoiseEcofin Borrower LLC[16] | 9,818,890 | 5.6% |
| Virgo Hermes, LLC[17] | 16,222,891 | 9.3% |

37.     Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  Notably these amounts, nor the cash consideration for which they will be exchanged for, are not properly accounted for.

38.     In addition, certain employment agreements with certain Volta insiders, entitle such insiders to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff as follows:

| Name | Cash ($)[2] | Benefits ($)[3] | Value of Acceleration of Unvested Volta RSU Awards ($)[4] | Value of Acceleration of Unvested Founder Awards ($)[5] | Total ($) |
|---|---|---|---|---|---|
| Vincent T. Cubbage[1] | $2,123,288 | $60,000 | $273,613 | $— | $2,456,901 |
| Brandt Hastings[1] | $2,123,288 | $60,000 | $433,318 | $— | $2,616,606 |
| Andrew B. Lipsher[1] | $1,698,630 | $60,000 | $131,042 | $— | $1,889,672 |
| Michelle Kley[1] | $1,698,630 | $60,000 | $258,000 | $— | $2,016,630 |
| Stephen Pilatzke[1] | $730,137 | $30,000 | $258,000 | $— | $1,018,137 |
| Christopher Wendel* | $— | | $— | $3,870,000 | $3,870,000 |
| Scott Mercer* | $— | $— | $— | $4,515,000 | $4,515,000 |
| James S. DeGraw* | $— | $— | $210,276 | $— | $210,276 |

| Name | Acceleration of Unvested Volta RSU Awards ($)[1] | Total ($) |
|---|---|---|
| Katherine J. Savitt | $93,013 | $93,013 |
| Eli Aheto | $93,013 | $93,013 |
| John J. Tough | $93,013 | $93,013 |
| Bonita Stewart | $93,013 | $93,013 |
| Martin Lauber | $93,013 | $93,013 |

39.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must

be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

40.     Thus, while the Proposed Transaction is not in the best interests of Volta, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

41.     On February 8, 2023, the Volta Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

42.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

    a.   Adequate disclosure as to whether a committee of disinterested and independent directors was created to run the sales process;

    b.   Adequate disclosure of the specific membership and powers of the committee of disinterested and independent directors was created to run the sales process, if one was created;

    c.   Adequate disclosure of the specific reasoning as to why no committee of disinterested and independent directors was created to run the sales process, if one was not created;

     d.   Adequate disclosure of why the retention of multiple financial advisors was necessary, given of the four engaged financial advisors, only Raymond James provided the Board with a fairness opinion;

     e.   Adequate disclosure of the amount of money paid to or owed to Barclays, Goldman Sachs, and/or Cantor Fitzgerald for their services related to the Proposed Transaction and the sales process;

     f.   Whether the confidentiality agreements entered into by the Company with Shell differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

     g.   All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Shell and/or its affiliates, would fall away; and

     h.   Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders

*Omissions and/or Material Misrepresentations Concerning Volta's Financial Projections*

43.    The Preliminary Proxy Statement fails to provide material information concerning financial projections for Volta provided by Volta management to the Board and Raymond James, and relied upon by Raymond James in its analyses.  The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

44.     The Preliminary Proxy indicates that in connection with the rendering of Raymond James' fairness opinion, Citi reviewed, "certain information related to the historical condition and prospects of Volta, as made available to Raymond James by or on behalf of Volta, including, but not limited to, financial projections prepared by or on behalf of the management of Volta."

45.     Accordingly, the Preliminary Proxy should have, but fails to provide, certain information in the projections that Volta management provided to the Board and Raymond James. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

46.     With respect to the *Growth Model Base Case* projections the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

a.  Adjusted EBITDA, including the underlying necessary metrics of interest, and the adjustments made regarding stock-based compensation and change in present value of warrant liability;

b.  EBIT, including the underlying necessary metric of interest; and

c.  Unlevered Free Cash Flow, including the underlying necessary metric changes in net working capital and the adjustments made regarding that metric.

47.     With respect to the *Blow-Down Model* projections the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

a.  Adjusted EBITDA, including the underlying necessary metrics of interest, and the adjustments made regarding stock-based compensation and change in present value of warrant liability; and

b.  EBIT, including the underlying necessary metric of interest.

48.     The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

49.     This information is necessary to provide Plaintiff, in their capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

50.     Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Raymond James' financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

_Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Raymond James_

51.     In the Preliminary Proxy Statement, Raymond James describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

52.     With respect to the _Selected Companies Analysis_, the Preliminary Proxy fails to disclose the following:

> a.  The specific corresponding valuation multiples for Volta implied by the Common Share Transaction Consideration which were compared to the mean, median, minimum and maximum relative valuation multiples of the selected public companies.

53.     With respect to the _Selected Transactions Analysis_, the Preliminary Proxy fails to disclose the following:

> a.  Volta's fully diluted share count, which was as of January 13, 2023;
>
> b.  The specific "publicly available information as of January 13, 2023 regarding certain selected precedent acquisition transactions except for Electric Blue's"

utilized;

    c.   The specific corresponding valuation multiples for Volta implied by the Common Share Transaction Consideration which were compared to the mean, median, minimum and maximum relative valuation multiples of the transaction value/charging stalls metric; and

    d.   The date when each selected transaction closed.

54.    With respect to the *Liquidation Value Analysis*, the Preliminary Proxy fails to disclose the following:

    a.   The specific inputs and assumptions used to calculate the utilized 3% transaction fee for a trustee;

    b.   The specific inputs and assumptions used to calculate the utilized $750,000 in fees for a potential restructuring per month; and

    c.   The specific line items upon which the net orderly liquidation values were based.

55.    With respect to the *Discounted Cash Flow Analysis* (or more specifically, the reasoning by Raymond James for not undertaking such an analysis here), the Preliminary Proxy fails to disclose the following:

    a.   The specific reasoning regarding Raymond James' substantial doubt regarding Volta's ability to continue as a going concern.

56.    These disclosures are critical for stockholders to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

57.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Volta stockholder.

As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

58.     Plaintiff repeats all previous allegations as if set forth in full herein.

59.     Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

60.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

61.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

62.     The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

63.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

64.     The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

65.     The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

66.     Plaintiff repeats all previous allegations as if set forth in full herein.

67.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

68.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

69.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Volta' business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

70.     The Individual Defendants acted as controlling persons of Volta within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Volta to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Volta and all of its employees.  As alleged above, Volta is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.      Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: February 15, 2023

**BRODSKY & SMITH**

By: *Evan J. Smith*

Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*